I concur fully with the result reached by the main opinion. I write specially, however, to address that portion of Part III.A. of the opinion in which the Court expressly declines to answer the question as to whether the ACJIC Act applies to the expungement of any court records because, it reasons, answering that question is unnecessary to a resolution of this appeal. I would have chosen to address this issue, which was raised, briefed, and orally argued by the parties.
The main opinion is correct that in this proceeding it matters not whether the ACJIC Act is applicable, because, "assuming without deciding that the ACJIC Act applies here, we conclude that it in no event countenances the actions of the municipal court in this proceeding." 938 So.2d at 402. However, the issue whether the actions of the municipal court might have been permissible had it attempted to comply with the ACJIC Act is still a viable one, and the ACJIC Act does not, by its own words, apply to courts and court files.
Although certainly not dispositive, it is noteworthy that the entirety of Chapter 9 of Title 41 of the Code of Alabama, in which the ACJIC Act is found, concerns *Page 405 
"Boards and Commissions," not courts. Article 23 of Chapter 9 contains the ACJIC Act, and the creation and functions of the Alabama Criminal Justice Information Center are established in §§ 41-9-591, Ala. Code 1975, which provides:
 "There is hereby created and established an Alabama Criminal Justice Information Center Commission, which shall establish, develop and continue to operate a center and system
for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity to be known as the Alabama Criminal Justice Information Center."
(Emphasis added.) The legislature, in crafting the ACJIC Act, nowhere mentions "courts" or "court records" in this general establishment section, although it would have been easy to do so and would have removed all doubt had the legislature intended to include courts within the ACJIC Act. Rather, the ACJIC Act deals with a "system" for accumulating, storing, retrieving, analyzing, and disseminating "information."
In discussing the definition of criminal justice agencies found in §§ 41-9-590(1), Ala. Code 1975, the main opinion recognizes that arguably the use in that definition of the term "adjudication" might bring courts, including municipal courts, within the purview of the ACJIC Act. The entirety of this definitional section, however, states:
 "(1) Criminal Justice Agencies. Such term shall include those public agencies at all levels of government which perform as their principal function activities or planning for such activities relating to the identification, apprehension, prosecution, adjudication or rehabilitation of civil, traffic and criminal offenders."
(Emphasis added.) Black's Law Dictionary defines agency as "3. A governmental body with the authority to implement and administer particular legislation" and defines"state agency" as "an executive or regulatory body of a state." Black's Law Dictionary 67-68 (8th ed.2004). These definitions fully support the concept of a governmental entity's operating a system pertaining to criminal justice information, or, put another way, performing activities relating to adjudication. It does not, however, encompass a "court," which, rather than dealing with "activities relating to . . . adjudication," concerns itself with dispute resolution — the adjudicatory process itself.
Policy questions relating to the expungement of criminal records are for the legislature. The Alabama Legislature well knows how to draft legislation that effectively shows its intent to provide for the expungement of records and how to make it clear that such legislation applies to a court and not an "agency." The same year the ACJIC Act was passed[4] the legislature also passed the Juvenile Justice Act.[5] In §§ 12-15-103 of the Juvenile Justice Act as codified,[6]
the legislature set out the procedure, prerequisites, and effects of both a "sealing order" and a "destruction order" concerning juvenile court files in great detail. §§12-15-103(g). It defies logic to presume *Page 406 
that the legislature, in the same general legislativesession, intended to include courts and court files in such an oblique manner in the ACJIC Act as "agencies" whose activities "relate" to "adjudication," when it used such explicit language in the Juvenile Justice Act passed almost simultaneously.
The main opinion does not argue that the ACJIC Act does in fact apply to courts, but only assumes arguendo that if it did, the Mobile Municipal Court has not complied with it. Indeed, the main opinion sets out several reasons that indicate that the ACJIC Act does not apply to courts. Most telling of those reasons is that process embodied in §§41-9-645, which allows an individual to request thatinaccurate or incomplete information be purged, modified,or supplemented by the original agency having custody or control of the "detail records." The ability of an individual to pursue this process of having inaccurate or incomplete information purged, modified, or supplemented cannot reasonably or rationally be compared to a procedure for *Page 407 
expunging of a complete court file or court record. The second paragraph of §§ 41-9-645 further states:
 "Should the agency decline to so act or should the individual believe the agency's decision to be otherwise unsatisfactory, the individual or his attorney may within 30 days of such decision enter an appeal to the circuit court of the county of his residence or to the circuit court in the county where such agency exists. . . ."
Certainly, the distinction between an agency's
denial and an appeal to the circuit court from that denial belies any notion that the latter is included in the former. The main opinion correctly points out that this right of appeal would be a "hollow right," because a circuit court would be reviewing its own, or another circuit court's, decision.
I would go one step further than the main opinion and affirmatively state that the ACJIC Act is not applicable to the expungement of court records.
I also join Justice Stuart's special writing insofar as Part IV is concerned.
STUART and SMITH, JJ., concur.
[4] Act no. 872, Ala. Acts 1975 (approved October 7, 1975).
[5] Act no. 1205, Ala. Acts 1975 (approved October 10, 1975).
[6] Section 12-15-103 provides as follows:
 "(a) On motion of the part of a person who has been the subject of a delinquency petition or on the court's own motion, the court shall vacate its order and findings and order the sealing of the legal and social files and records of the court, probation services and of any other agency in the case if it finds that:
 "(1) Two years have elapsed since the final discharge of the person from legal custody or supervision or two years after the entry of any other court order not involving custody or supervision; and
 "(2) He has not been convicted of a felony or misdemeanor involving moral turpitude or adjudicated delinquent prior to the filing of the motion and no proceeding is pending seeking such conviction or adjudication.
 "(b) The motion and the order may include the files and records specified in Section 12-15-100.
 "(c) Reasonable notice of the motion shall be given to:
 "(1) The prosecutor;
 "(2) The authority granting the discharge if the final discharge was from an institution, parole or probation; and
 "(3) The law enforcement officers, department and central depository having custody of the files and records specified in Section 12-15-100 and included in the motion.
 "(d) Upon the entry of the order, the proceedings in the case shall be treated as if they never occurred and all index references shall be deleted and the court and law enforcement officers and departments shall reply and the person may reply to any inquiry that no record exists with respect to such person. Inspection of the files and records included in the order may thereafter be permitted by the court only upon motion by the person who is the subject of such records and only to those persons named in the motion; provided, however, that the court in its discretion may by special order in an individual case permit inspection by or release of information in the records to any clinic, hospital or agency which has the person under care.
 "(e) Any adjudication of delinquency or conviction of a felony or a crime involving moral turpitude subsequent to sealing shall have the effect of nullifying the sealing order.
 "(f) A person who has been the subject of a delinquency petition and has met the conditions stipulated in subdivision (2) of subsection (a) of this section may, five years after reaching the age of majority, file a motion requesting the destruction of all records pertaining to his case. If the court grants the motion, copies of the order shall be sent to all offices or agencies that are repositories of such records and all such offices and agencies shall comply with the order.
 "(g) Upon the entry of a sealing order or a destruction order, all references including arrest, complaint, referrals, petitions, reports and orders shall be removed from all agency, official and institutional files and sealed or destroyed as aforesaid and a finding of delinquency shall be deemed never to have occurred. No child who has been the subject of such a sealing or destruction order shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to proceedings so sealed or destroyed and, in response to any inquiry or on any application or in any proceeding, the person may state that he has never been arrested, taken into custody, committed or adjudicated a delinquent with regard to the proceedings so sealed or destroyed.
 "(h) A person who has been the subject of a delinquency petition shall be notified of his rights under subsections (a) and (f) of this section at the time of his final discharge."